By the Chancellor.

If the jurisdiction of this court were now to be settled upon English precedents, there might be some doubt about the question, from the cases, as brought into one view, by Mr. Fonblanque; but I shall leave this clashing of English Judges to be reconciled among themselves, and take up the question upon first principles.
I hold, that in every well regulated government there must somewhere exist a power of affording a remedy where the law affords none ; and this peculiarly belongs to a Court of Equity; and as husband and wife are considered as one person in law, it is evident, that in this case the law can afford no remedy; which is universally admitted to be a sufficient ground to give this Court jurisdiction; and therefore it must entertain the bill, if there be sufficient proof of the marriage.
The standing rule in equity is, that an answer is not evidence in favour of the defendant, unless it be responsive to the bill; and therefore, whatever the answer asserts affirmalively, in opposition to the plaintiff’s demand, must he proved by indifferent testimony. Apply this rule then to the case before me, and the result will be, that the plaintiff must prove her marriage with the defendant, since he has-denied it by his answer, and he must prove the other matters set out in his answer, as not being responsive to the bill; that is to say,- he must prove, 1st. The circumstances which he states with respect to the relinquishment of her dower; 3d. That he then denied the marriage; 3d» That Ann. *512 Church was the natural daughter of the plaintiff} (if he, or his counsel, supposes that to make out these points- would be of service ;) 4th. That she refused to live with him in 1798, in the rented house; and, 5th. That her manner of living, while she was from him, was unlike an upright wothan ; or, if it is intended to charge her with living in adultery., it must be proved by him.
Thus, having stated what devolves on each party tcprove, I will next examine the proof of the marriage, since it seems to be admitted on all hands, that if they were married, he must allow to her alimony: and I confess upon this point, I do not perceive any ground on which to rest a doubt: evidence of a like description, coming from him under like circumstances, of the most atrocious crime that he could commit, would be sufficient to take his life ; and yet, we are told, it is not sufficient to fix one of the most honourable acts in society upon him; namely, that he was married! lest it should draw from him an annual support for his wife! and it was contended with great zeal and confidence, that there must be proof of an actual marriage, and that the defendant’s confession of the fact, though attended with, all the present circumstances, was not sufficient; and in support of this, one solitary case was produced, of Miller v. Morris, (4 Burr. 2057.) which was an action for criminal conversation with the plaintiff’s wife, which certainly bears no analogy to this case, and, if it proves any thing, proves that evidence- like that, which is now before the Court, may be admitted in all cases, but in prosecutions for bigamy and crim. con, for this plain reason, that a crime shall not be fixed upon one, but by the highest evidence? but the virtuous act of matrimony may in this case, as in many others, be proved by cohabitation, name, reputation, and other circumstances. The marriage then being fixed beyond any doubt, in.my mind, it remains only to be inquired into, whether at this stage of the cause the defendant has fixed so much blame on his wife, as that she should not have alimony pendente lite. The rule as before-laid down -with *513 respect to the answer being evidence, must not he overlooked; and the defendant must prove his affirmative matter contained therein. But not one tittle of his proof supports the circumstances under which he states the dower to have been relinquished, or that lie then denied the marriage, or that Am Church was the natural daughter of his w ife, or that she refused to live with him in 1798, or that she conducted herself improperly abroad: and the whole of the correspondence before stated proves that these things, so far as they were noticed in it, were not true ; and this brings me to his evidence.
1. James Miller’s affidavit states, that she said they were married in Philadelphia>•- but what does this prove ? It maybe a misapprehension bn his part; and I am inclined to think it was.
2. As to the proof by John Sedwich, it is clear upon the face of his affidavits, that he was holding an unauthorized conversation with her, if indeed he held one at all, and that she was not bound to satisfy him about it; but if she dids is it not very likely, from the contiguity of Philadelphia, the Delaware, and the Jerseys, that names were mistaken or misapplied ? and if so, then the evidence produced against her, as coming from herself, should not be garbled ; and taken altogether, would fix the marriage. And,
3. If any one should be disposed to indulge his suspicions, because of the evidence of Robert Corvan, I would recommend it to such person to read the letters of the defendant, addressed to the plaintiff while she was in Norfolk, at the house of Mr. Andrews. Upon the whole, I do not discern any cause of complaint against the conduct of Mrs! Purcell, and she must be allowed alimony pendente lite.
Whereupon the Court then made an order to this effect, that the defendant should pay to the next friend of the plaintiff for her maintenance, quarterly, the sum of seventy-five dollars, pending this suit, to commence from the first of January, 1808, until the further order of the Court; *514 unless the defendant should shew cause to the contrary, before'the Judge in vacation, on the twentieth of March next.
The defendant then filed a cross bill against the plaintiff by the name of Ann Hazleton, and alleged therein that he never was married to her, and called on her to say, on oath, if they ever were married ? and if they were, where did it take place ? what was her name ? who performed the ceremony? who were present when the ceremony was performed! where did they first become acquainted ? were they married in a church, or in a private house ? if the former, what church ? if the latter, whose house ? who were present, and where did they reside ?
To this bill the plaintifF answered, that they were married, and that she is the wife of the said Charles Purcell; that their first acquaintance was at the house of a Mr. Reynolds, in Philadelphia, a seal-cutter and engraver, in the fall of 1785; that at the time of their intermarriage she bore the name of Ann Hazleton; that on the 10th April, 1786, they and Mr. and Mrs. Emery, and a Miss Heizlar, took a‘ boat at Walnut-street wharf, and went over to the New-Jersey shore, where they were met by a man, whom the. said Charles asserted, and she believed, was a clergyman of the Swedish congregation in Philadelphia, and then and there the ceremony was performed, in the presence of those persons : but where they reside now she cannot say; and then they returned to Philadelphia; and in a few days afterwards, on their way to the vessel which was to take them to Richmond,_ they met with Mr. John Collins, to whom she was introduced by the said Charles, as his wife.; and the said Collins then introduced her to the father of Mrs. Collins who is. now Mrs. H. Dabney, of Richmond; that on their arrival, in Richmond, they were very kindly received, and Mr. Wad-dell gave up his own room to them: and she referred to several respectable people, to prove the unvaried acknowledgments of the said Charles that she was his wife.
*515 And now by consent of parties these causes came on to be heard together, and were submitted without further argument.

By the Chancellor.

The only difference that I find between the record now, and when it was formerly before me, is in a cross bill and answer: surely if there was any room before to doubt about the marriage of these parties, the answer to the cross bill must now be considered as freeing the case of all such doubt; for the answer, being responsive to the bill, is good evidence in her favour: and monstrous indeed would be the state of that society which would admit a man, as, for example, Charles Purcell, to bring a woman from another country, and to introduce her here among his friends as his wife; live with her for many years as his wife; treat her as his wife ; convey real estate, and have her relinquishment of dower taken as his wife ; address to her letters, as his wife, and not compel him to maintain her as his wife, unless she was In fault; because he says he was not married to her. But this declaration cannot be believed : they both agree as to the trip to the Jerseys, and as to the time when it was made, but she gives the account of the marriage, in answer to one of his interrogatories, and therefore he must stand concluded upon that point: it may be that he practised a fraud upon her, and that the Stuedish man was not a clergyman; yet it was done by the means of Charles Purcell, and not by Ann Hazleton; and I will,under all the circumstances of this case, hold him to it. The rule of law is, that in a controversy touching the validity of a marriage, as whether a marriage or not, no alimony is due until some matrimonial proof appear, or that it doth some way constare de matrimonio ; but wherever a marriage doth appear, unless the wife be in fault, there alimony shall he due. God. Rep. Can. 510. and in a book entitled “ Praxis in foro Ecclesiastico,” tit. 35. p. 40. as translated by Mr. Warden, the rule in England was, when a suit was brought in the Ecclesiastical Court by a wife against her bus- *516 band, the Judge first ascertained the marriage, which he did either by the answer of the proctor, or of the principal party, or by testimony ; all of which has been done in this case.
The correspondence shews that the plaintiff left the de» fondant at his instance, and for his accommodation, after the fire in 1798; that in 1799 he boarded her at Mr. Pauley’s, in Ner Kent; that in 1802, when she left Mr. Pauley’s, she went to Mr. Andrews’, in Norfolk; that he the defendantafterwards wrote to her, stating that she must not return, and advised her, that if Mr .Andrews could not board her, to get him to provide her with board in a private house by the year, payable quarterly, and promised to send her some money in a short time s in 1803 he wrote to her again, and among other things stated, that he had sent Mr. Andrews three kegs of butter, and begged .of her to be useful in his family, gave an account of his prospects, and assured her she should not want while he could command a shilling; in fact, it seems that she was kept off by his means, that .he might recover from his embarrassments, and that when she conceived he had done so, and insisted upon her right to return, then for the first time he denounced her as the most unworthy of her sex. Upon this view of the case, and upon the ground of public convenience, as well as of that respect which is due to the .matrimonial state, Charles Purcell should be considered as the husband of the plaintiff, and bound to afford to her a reasonable maintenance, The allowance pendente lite was made without any particular information with respect to the value of his property; and therefore the Court gave him a day to shew cause against it; if cause had been shewn, and the allowance had been too much, an injunction could have been granted to the excess; but as no cause was shewn, the allowance was deemed reasonable ; and at an after day, when the parties were willing to bring on the cause, the Court thought it best, under all the circumstances, of the P3se, to refer it to a Commissioner, tq ascertain the value *517 of his property, that only a reasonable annual allowance might be made, that should be suitable to their station in life, for which purpose he was ordered to attend Commissioner Ladd; but although this was for his benefit, it was answered in his name, by a letter to the Commissioner, that the. order was an unconstitutional attack ort the liberty of a free citizen of Virginia, in terms and language very different from his letters addressed to Mrs. Purcell, which induces a belief that he was advised to this course, and was not in fact the author of the letter addressed to the Commissioner; and if that was the fact, and his adviser were known to the Court, if he should not have cause to regret it, the Court would not. The Commissioner however proceeded, and made a report upon the best information he could get, and reports the value of Purcell’s property to be 29,800 dollars; but as it does not seem to be a very productive estate, and 75 dollars quarterly was thought sufficient, the Court will take that cum for its guide now, and fix the annual allowance at 300 dollars, with liberty, however, to each party to apply to the Court to increase it, or to diminish it, as circumstances may in future make it proper. This is as much as I thiuk the Court can do. But the plaintiff’s counsel supposed that the Court would set apart a third of the defendant’s estate; but 1 suppose not: for the husband, though bound by every legal and moral principle to afford to his wife a support, yeé if, in violation of these obligations, he becomes base enough to cast her off without any just cause, all, I apprehend, that can be imposed upon him is a suitable maintenance, which may be varied according to circumstances, and which should not continue longer than he is willing to restore her to the comforts cf bed and board, and to give satisfactory assurances for her enjoyment thereof, which, if she should refuse, the allowance made for her support would, at his instance, be taken away; and if she were to survive him, she would be entitled to dower, and her alimony would of course *518 cease. This is the opinion of the Court, conformably to which Mi-. Randolph may draw a decree. ,
The decree was to this effect;
That the defendant in the first suit should annually, on the first day of October, pay to the plaintiff 300 dollars for her maintenance, until he shall restore her to the comforts of her bed and board, and give satisfactory assurances for her enjoyment thereof; that on the 1st October next the quarterly allowances are to cease; and liberty was reserved to each party, at any time, to apply to the Court to have an increase or diminution of the said annual allowance, as circumstances may in future make it proper; and the cross bill was dismissed; and it was ordered, that the costs of both suits be paid by the said Charles Purcell; who by counsel prayed an appeal, which the Court said he might have in the last suit, if he asked upon the usual. terms; but in the first suit the appeal was refused for these reasons:
1. Because he had not made any of the quarterly payments, and was under a commission of rebellion.
2. Because the decree was not final, and. the appeal was at the discretion of the Court; but the Chancellor said, that if Charles Purcell would come in and free his contempt, by paying up the arrears, and give security for the support of his wife pending the appeal, it should be granted; but his counsel said that he would not do it; and the Chancellor said, the appeal should not be allowed; and be added, that he had the highest authority in support of the principles which he had laid down, to wit, the universal sense of the country, an declared every day, with great propriety, in such cases in the County Courts, and in no instance had ah appeal from their decisions ever been taken, which proved that where they acted, they had done right, and with which the people were perfectly satisfied.
*519 QjV After the decision of the above case by the Chancellor, the defendant’s counsel made application to the Judges of the Court of Appeals, for leave to carry up the case to that Court, by appeal, which they unanimously refused, and expressed themselves perfectly satisfied with the decree upon the merits; so that the doctrine of alimony may now be considered as settled.
The principle having been settled, that the decree for alii mony was rightly pronounced in this case, the following proceedings, to carry that decree into effect, have taken place in the Court of Chancery ;
February 19th, 1810. The defendant was brought into Court, under a commission of rebellion, and refusing obedience to the former order of the Court, was ordered to be forthwith committed to the gaol of Henrico County.
February 27th, 1810. A writ of habeas corpus, on the motion of the defendant’s counsel, was directed to the Sheriff of Henrico County, to bring the defendant up; because it was stated to the Court that he was now ready to do that which was required of him.
February 28th, 1810. The defendant was brought into Court, under the writ oí habeas corpus awarded yesterday, and stated his willingness to do any thing which the Court should order, that he might be discharged:
And it was ordered that, upon executing a note for all the arrears due to the plaintiff, under the several orders of this Court, negotiable at the bank of Virginia, payable to the next friend of the plaintiff, with such endorsors as Edmund Randolph, Esq. the counsel of the plaintiff, should approve; and also entering into bond in the penalty of 4,200 dollars, with such security as he should also approve, conditioned to perform the decres of this Court, heretofore *520 pronounced, that the commission of rebellion should be supersededy and the defendant discharged out of custody.
N. B. The security was given in the last instance, and the money paid in the first; and the defendant thereupon discharged.